# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PENNY WOODRUFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-06-11-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Penny Woodruff requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on September 24, 1961 and was forty-two years old at the time of the first administrative hearing. (Tr. 259). She obtained her GED and proceeded to earn an associate's degree in office management. (Tr. 265-66). The claimant alleges that she has been unable to work since February 29, 1999 because of myofascial pain syndrome, degenerative disc disease, muscle spasms, migraine headaches, irritable bowel syndrome, and chronic depression. (Tr. 215).

### Procedural History

The claimant initially applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on July 10, 2001. Her application was denied. ALJ Jodi B. Levine found that the claimant was not disabled on January 28, 2005, and the Appeals Council denied review, but this Court remanded at the Commissioner's request in Case No. CIV-10-295-RAW-SPS when the recording of the administrative hearing proved inaudible. After a second administrative hearing, the ALJ again found that the claimant was not disabled on December 29, 2006 (Tr. 75-82). The Appeals Council remanded the case to the ALJ on March 24, 2007 because: (i) the ALJ failed to properly analyze medical evidence; (ii) a current medical record was lacking; (iii) the ALJ failed to properly analyze the claimant's credibility; and (iv) the ALJ failed

to properly evaluate the claimant's mental impairments (Tr. 86-87). ALJ Thomas E. Bennett conducted another administrative hearing on August 5, 2008, and again found that the claimant was not disabled in a written opinion dated December 31, 2008 (Tr. 25-35). The Appeals Council denied review, so the December 31, 2008 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments, *i. e.*, (i) chronic neck and back pain secondary to degenerative disc disease of her and other osteoarthritis of her cervical spinal region and possibly her lumbar spinal region; (ii) osteoarthritis of her cervical spinal region and possibly her lumbar spinal region; (iii) osteoarthritis of her right shoulder status post April 2003 decompression surgery; (iv) osteoarthritis of her right knee status post 1989 surgical procedure; (v) history of right foot pain secondary to possible 2002 Lisfranc tarsometatarsal joint dislocation; (vi) chronic and/or intermittent bronchitis; (vii) history of migraine headaches; (viii) history of hiatal hernia with GERD; (ix) depressive disorder (not otherwise specified); and (x) history of prescription drug abuse (Tr. 30), but retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations: (i) sitting, standing, and/or walking at the claimant's discretion; (ii) no overhead lifting or overhead work using the right upper extremity; (iii) no repetitive or sudden twisting or turning of the head; (iv) occasional climbing of stairs, bending, stooping, crouching, and/or kneeling; (v) only infrequent

balancing; (vi) no climbing of ladders, ropes, or scaffolds; (vii) no crawling; and (viii) working in environments with no more than routine levels of atmospheric pollutants (Tr. 30). Although the claimant had no past relevant work, the ALJ found that she was not disabled because there was work in the national economy that she could perform, *i. e.*, records clerk, mail clerk, information clerk, and inspector (Tr. 33-35).

## Review

The claimant contends that the ALJ committed error by failing to properly analyze the opinion of her treating physician Dr. Richard Tidwell, D.O. The Court agrees, and the decision of the Commissioner must therefore be reversed.

Dr. Tidwell submitted a letter on May 14, 2004 discussing the claimant's medical problems. He treated claimant "for multiple medical problems including fibromyalgia, arthritis, degenerative disc disease and chronic pain syndrome" and stated that she would be limited based on her medical problems: (i) to lifting ten pounds frequently and twenty pounds occasionally; (ii) simple tasks "with no repetitive type work that requires more than occasional reaching, handling or fingering with either upper extremity; (iii) no more than occasional bending, stooping, kneeling, or climbing; (iv) no crawling or balancing; (v) frequent rest breaks of ten to fifteen minutes every hour; and (vi) discretionary sitting and standing (Tr. 444).

Medical opinions from a treating physician are entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the records." *See Langley*

*v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotation marks omitted].  When a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing all of the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. And if the ALJ decides to reject a treating physician's opinions entirely, he must "give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotations omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300.

The ALJ found Dr. Tidwell's opinion "not well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] not consistent with contemporaneous

medical treatment notes and the other substantial evidence in the hearing record" and concluded that "to the extent that his assessment/opinion is inconsistent with the residual functional capacity set forth above it is not entitled to controlling weight" (Tr. 31).  With regard to fibromyalgia, the ALJ noted that "the diagnosis of fibromyalgia is somewhat difficult to make and normally requires the evaluation and input from several medical specialists, such as a rheumatologist, neurologist, and others" and questioned whether the claimant had the condition because her doctors (including Dr. Tidwell) had not "sought input from these multiple specialists in establishing the diagnoses of fibromyalgia" the ALJ did not believe that she did, in fact, suffer from fibromyalgia (Tr. 31-32).  The ALJ also noted that "many of the symptoms attributed by the claimant's treating family practice specialist as associated with fibromyalgia, actually appears to be associated with other established medical conditions" and attributed the claimant's neck and back pain to degenerative disc disease, her shoulder pain to impingement syndrome, her right foot and ankle pain to possible Lisfranc fracture dislocation, right knee pain to osteoarthritis, and chronic fatigue to depression (Tr. 32).

      The ALJ's analysis of the treating source opinion by Dr. Tidwell is erroneous for several reasons.  First, when the Appeals Council remanded the second denial of benefits, it instructed the ALJ to "request the treating source [Dr. Tidwell] to provide additional evidence and/or further clarification of the opinion" as appropriate (Tr. 87).  *See, e. g.,* 20 C.F.R. § 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or

ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The ALJ did not, however, re-contact Dr. Tidwell; he opted instead for the testimony of reviewing state agency physician Dr. Thomas Lynn, giving no explanation for his decision to ignore the Appeals Council's instructions (and the applicable regulations) and to prefer the opinion of a reviewing physician over that of a treating physician. *See, e. g., Miranda v. Barnhart*, 205 Fed. Appx. 638, 641 (10th Cir. 2005) (noting that the ALJ did not adequately explain why the opinion of a non-examining physician deserved greater weight than the opinion of an examining physician) [unpublished opinion]. Furthermore, Dr. Lynn's testimony was anything but definitive on this point; for example, Dr. Lynn assessed the claimant's RFC but noted that she had a "history of fibromyalgia" and conceded that there was "always that possibility" that the claimant might have a problem with chronic fatigue that might affect her RFC (Tr. 1000-02).

Second, in discounting Dr. Tidwell's diagnosis of fibromyalgia and attributing the claimant's pain to other conditions, the ALJ impermissibly imposed his own medical judgment for that of Dr. Tidwell. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") [emphasis in original]. As

the Appeals Council instructed (and the regulations require), the ALJ should have re-contacted Dr. Tidwell if he had any questions about his diagnosis, *see, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002), or cited competent *medical* opinion that called the diagnosis into question.

Because the ALJ failed to properly analyze the opinion of the claimant's treating physician Dr. Tidwell, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis as outlined above. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of March, 2012.

                                                                    _____
                                                                    Steven P. Shreder
                                                                    United States Magistrate Judge
                                                                    Eastern District of Oklahoma